# United States Court of Appeals for the Federal Circuit

---

**SHARP ELECTRONICS CORPORATION,**
*Appellant,*

**v.**

**JOHN MCHUGH, SECRETARY OF THE ARMY,**
*Appellee.*

---

2012-1299

---

Appeal from the Armed Services Board of Contract Appeals in No. 57583, Administrative Judge John J. Thrasher.

---

Decided: February 22, 2013

---

ANDREW KENNETH WIBLE, Cohen Mohr, LLP, of Washington, DC, argued for the appellant. Of counsel was ANDREW J. MOHR.

NICHOLAS JABBOUR, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellee. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and HAROLD D. LESTER, JR., Assistant Director.

---

Before DYK, PLAGER, and CLEVENGER, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* DYK.

Dissenting opinion filed by *Circuit Judge* PLAGER.

DYK, *Circuit Judge.*

Sharp Electronics Corporation ("Sharp"), a federal supply contractor, submitted a termination compensation claim to the Department of the Army contracting officer ("CO"), and thereafter brought a Contracts Dispute Act ("CDA") claim before the Armed Services Board of Contract Appeals ("ASBCA"). Sharp alleged that because the Army failed to exercise the entirety of the last option year under a delivery order, Sharp was entitled to premature discontinuance fees under its General Services Administration ("GSA") schedule contract. The ASBCA dismissed Sharp's appeal for lack of subject-matter jurisdiction, concluding that the Federal Acquisition Regulation ("FAR"), does not permit ordering agency COs to decide disputes pertaining to schedule contracts. We agree that under FAR 8.406-6, only the GSA CO may resolve disputes that, in whole or in part, involve the interpretation of disputed schedule contract provisions. Because Sharp's claim turns on such a dispute, it must be submitted to the GSA CO, and the ASBCA has no jurisdiction. We therefore affirm.

BACKGROUND

I

Historically, government agencies entered procurement contracts and purchased supplies and services on an individual basis. Contract disputes were initially directed to the agency contracting officer, and appeals went to an agency Board of Appeals under the contract's disputes clause, or, if the contract had no pertinent clause, to a district court or what is now the Court of Federal Claims.

*See generally* 4 *Report of the Commission on Government Procurement* 11–28 (1972); Joel P. Shedd, Jr., *Disputes and Appeals: The Armed Services Board of Contracts Appeals*, 29 Law & Contemp. Probs. 39 (1964).

Over time, federal contracting became more centralized. The Federal Property and Administrative Services Act of 1949, Pub. L. No. 81-152, 63 Stat. 377, created the GSA to standardize federal procurement processes and procure, store, and distribute supplies to federal agencies. *See generally* James F. Nagle, *A History of Government Contracting*, 450–52 (2d ed. 1999); 3 *Report of the Commission on Government Procurement* 10–11; 27–37 (1972). Under the current version of the GSA Schedules Program, also called the Federal Supply Schedule Program or Multiple Award Schedule Program, *see* FAR 8.402(a), GSA "acts as the contracting agent" for the federal government, negotiating base contracts with suppliers of commercial products and services. *Multiple Award Schedule Procurement*, 47 Fed. Reg. 50,242-244 (Nov. 5, 1982). Each supplier publishes an Authorized Federal Supply Schedule Pricelist listing the items offered pursuant to its base contract, as well as the pricing, terms, and conditions applicable to each item. *See* FAR 8.402(b). Individual agencies issue purchase orders under the base contract as needed. *See* FAR 38.101(a); 8.405-1. The terms of the base contract, referred to as the "schedule" contract, are incorporated by reference into the order.

Schedule contracts are intended to simplify the acquisition process. However, they have generated jurisdictional uncertainty with respect to disputes, which may involve (1) the correct interpretation of the schedule contract; (2) the correct interpretation of the agency's order; (3) the facts relating to the parties' performance; or (4) some combination of these issues. Prior to 2002, the regulations established that only the schedule office CO (here, the GSA CO) could issue a final decision in a dispute pertaining to an order under a schedule contract.

*See* FAR 8.405-7 (2000) ("The ordering office shall refer all unresolved disputes under orders to the schedule contracting office for action under the Disputes clause of the contract.").

Effective July 2002, the FAR was amended,[1] authorizing ordering COs to resolve certain "disputes arising from performance of the order." FAR 8.405-7(a)(1)(i) (2002); *see also Federal Acquisition Regulation; Federal Supply Schedule Order Disputes and Incidental Items (final rule)*, 67 Fed. Reg. 43,514, 43,514 (June 27, 2002). The current FAR provision is set forth below. As before, the GSA CO has sole authority over the schedule contract; the ordering CO must still refer disputes "pertaining to the terms and conditions of schedule contracts" to the schedule CO for a decision. FAR 8.406-6(b) (2012). Because the parties here dispute the interpretation of both the schedule contract and the purchase order, the question is which CO has jurisdiction under the FAR.

## II

On September 18, 2001, Sharp and GSA entered into a schedule contract, Multiple Award Schedule Contract No. GS-25F-0037M ("Sharp's Schedule Contract"), which allowed agencies to lease or purchase office equipment and supplies from Sharp's Schedule Pricelist. The pricelist included Special Item Number ("SIN") 51-58a, covering monthly lease plans for the operation and maintenance of copier equipment, and setting forth additional terms and conditions applicable to such leases,

---

[1] At the time of amendment, the applicable regulation was FAR 8.405-7; it has since been renumbered as FAR 8.406-6. *See Federal Acquisition Regulation; Federal Supply Schedules Services and Blanket Purchase Agreements (BPAs)*, 69 Fed. Reg. 34,231, 34,239 (June 18, 2004).

including provisions pertaining to payment, lease terms, the exercise of options, and early termination fees.

On December 1, 2005, the Army issued delivery order No. W91ZLK-06-F-0028 to Sharp "in accordance with and subject to terms and conditions" of Sharp's Schedule Contract. J.A. 18. The order provided for a four-year lease of copier equipment, including one Base Year and three Option Years, with the last Option Year ending on December 1, 2009. Sharp's Schedule Pricelist stated that with respect to delivery order leases of this type, "the Government intends to exercise the renewal options contained herein and lease the Equipment for the entire Lease Term." Option Years One and Two were exercised in full; on November 20, 2008, the Army and Sharp executed Modification No. P00011 ("Mod 11"), which "partially exercise[d] option year three" for six months. J.A. 3. The parties subsequently executed Modification No. P00012 ("Mod 12"), which extended the lease for three more months. The lease finally ended on August 31, 2009. Mods 11 and 12 were silent as to the reservation or release of claims associated with the modifications.

Sharp viewed the Army's failure to fully exercise Option Year Three as a premature cancellation, entitling Sharp to fees under the termination provisions of its schedule contract. In January 2011, Sharp filed a formal claim with the Army CO, citing the termination fee provisions of its schedule contract, and seeking $67,928.63 in early termination fees (representing four times the base monthly charge for each unit). The Army CO did not respond, and did not refer Sharp's claim to the GSA CO responsible for Sharp's Schedule Contract. After sixty days, Sharp appealed the deemed denial of its claim to the ASBCA. *See* FAR 8.406-6(c).

The ASBCA "sua sponte[] raised the issue of its jurisdiction to decide th[e] appeal." *Sharp Elecs. Corp.*, ASBCA No. 57583, 12-1 B.C.A. ¶ 34,903, at 171,621

("*ASBCA Decision*"). The jurisdictional issue that concerned the ASBCA arose from the regulatory division of CO authority in disputes involving federal supply service contracts. Under the CDA, codified at 41 U.S.C. §§ 7101–7109, and its implementing regulations, the FAR, a contractor's claim must be submitted in writing to the appropriate federal CO for a final decision. 41 U.S.C. § 7103(a)(1); *see also* FAR 52.233-1. As discussed above, in disputes involving schedule contracts, FAR 8.406-6, as amended, allocates authority among ordering and scheduling COs. The question here is whether FAR 8.406-6 authorized the Army CO to decide Sharp's claim. If the Army CO was not authorized to decide the claim, the deemed denial was not a valid basis for ASBCA jurisdiction. *Case, Inc. v. United States*, 88 F.3d 1004, 1009 (Fed. Cir. 1996); *see also* 41 U.S.C. § 7105(e)(1)(A) (defining ASBCA jurisdiction). The ASBCA concluded that its jurisdiction "turn[ed] upon whether or not this dispute pertains to the contract terms and conditions of the schedule contract or arises from performance of the [delivery order]," and invited the parties to brief the issue "in light of FAR 8.406-6(b)." *ASBCA Decision*, at 171,622.

The parties agreed that the termination fees Sharp sought were authorized, if at all, by provisions in Sharp's Schedule Contract with GSA. Sharp invoked the "Premature Discontinuance Provisions" of its 2005 GSA-approved schedule pricelist. These provisions, set forth at Special Item Number 51-58a, ¶ 21N(2), and included in Modification No. 32 to Sharp's Schedule Contract, stated in relevant part:

> If the Government terminates a FMV lease prior to its expiration . . . the Government shall pay all amounts due the Contractor as of that date and a "Premature Discontinuance Fee" ("PDF"). The PDF is the monthly equipment component, for each unit/accessory being terminated times the number of months remaining in the FMV Lease.

For its part, the Army contended that because Mod 11 represented a bilateral agreement to shorten Option Year Three to six months, the lease was not terminated "prior to its expiration," and the discontinuance provisions were inapplicable.

In their jurisdictional briefings to the ASBCA, both parties argued that the Army CO could resolve the dispute. The Army argued that the dispute pertained solely to the parties' contractual obligations under Mod 11, an issue that could be decided by the Army CO responsible for the delivery order. Sharp argued that the relevant termination provisions needed only to be applied to the facts, and that this application constituted an issue of performance under the delivery order, which could be decided by the Army CO.

The ASBCA rejected both parties' arguments. It determined that the "fundamental issue under this appeal is the applicability of the terms and conditions of the Schedule Contract"—i.e., the termination for convenience provisions—"not performance under the [delivery order]." *ASBCA Decision*, at 171,622. The ASBCA determined that it "d[id] not have jurisdiction to hear appeals from ordering activity COs where 'the dispute . . . is related solely to the validity and/or applicability of the terms and conditions of the' schedule contract, not performance of the [delivery order]." *Id.* (quoting *Sharp Elecs. Corp.*, ASBCA No. 54475, 04-2 BCA ¶ 32,704, at 161,796). Because "the Army CO lacked authority to resolve this dispute," the ASBCA dismissed Sharp's appeal. Sharp timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(10) and 41 U.S.C. § 7107(a)(1).

## DISCUSSION

In accordance with the CDA, 41 U.S.C. §§ 7101–7109, we review the ASBCA's decisions on questions of law de novo. *See* 41 U.S.C. § 7107(b)(1); *Ra-Nav Labs. v. Widnall*, 137 F.3d 1344, 1346 (Fed. Cir. 1998). "Whether or

not the Board has jurisdiction is a question of law." *Arnold M. Diamond, Inc. v. Dalton*, 25 F.3d 1006, 1010 (Fed. Cir. 1994).

The CDA requires that "[e]ach claim by a contractor against the Federal Government relating to a contract shall be in writing," and "shall be submitted to the contracting officer for a decision." 41 U.S.C. § 7103(a)(1)–(2). "Under the CDA, a final decision by a CO on a 'claim' is a prerequisite for Board jurisdiction." *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (en banc). The CDA gives the ASBCA jurisdiction to "decide any appeal from a decision of a [CO] of the Department of Defense, the Department of the Army, the Department of the Navy, the Department of the Air Force, or the National Aeronautics and Space Administration relative to a contract made by that department or agency." 41 U.S.C. § 7105(e)(1)(A). With certain exceptions not relevant here, the ASBCA's counterpart, the Civilian Board of Contract Appeals ("CBCA"), has jurisdiction to decide appeals from decisions by COs of other agencies, including GSA. *Id.* at § 7105(e)(1)(B).

Pursuant to statutory mandate, the Federal Acquisition Regulatory Council is required to promulgate the FAR, "a single Government-wide procurement regulation," 41 U.S.C. § 1303(a)(1); this regulation implements statutes like the CDA that concern federal procurement contracts, *see Essex Electro Eng'rs, Inc. v. United States*, 960 F.2d 1576, 1580–81 (Fed. Cir. 1992), *overruled on other grounds by Reflectone*, 60 F.3d at 1579.

As amended, FAR 8.406-6 distributes authority to resolve contract disputes with schedule contractors between the ordering agency CO and the GSA CO, depending on the nature of the dispute:

(a) Disputes pertaining to the performance of orders under a schedule contract.

(1) Under the Disputes clause of the schedule contract, the ordering activity contracting officer may—

(i) *Issue final decisions on disputes arising from performance of the order (but see paragraph (b) of this section)*; or

(ii) *Refer the dispute to the schedule contracting officer.*

(2) The ordering activity contracting officer shall notify the schedule contracting officer promptly of any final decision.

(b) Disputes pertaining to the terms and conditions of schedule contracts. *The ordering activity contracting officer shall refer all disputes that relate to the contract terms and conditions to the schedule contracting officer for resolution* under the Disputes clause of the contract and notify the schedule contractor of the referral.

FAR 8.406-6 (2012) (emphases added).

The regulation clearly authorized the ordering CO to decide routine disputes about order performance not involving interpretation of the schedule contract, such as whether the contractor's default was excusable. *See* FAR 8.406-4(b) (2012) ("If the contractor asserts that the failure was excusable, the ordering activity contracting officer shall follow the procedures at 8.406-6, as appropriate."); *see also Spectrum Healthcare Res.*, 2006-2 B.C.A. ¶ 33,377, 165,469 ("FAR 8.406-4 . . . authorized [the ordering] CO, in appropriate circumstances, to determine whether the default was excusable."). However, the regulation also created uncertainty as to whether the ordering CO could decide disputes requiring interpretation of the schedule contract. *See, e.g., BearingPoint, Inc. v. United States*, 77 Fed. Cl. 189, 194 (2007) (the ordering CO could not resolve a dispute pertaining to an order

under a schedule contract); *United Partition Sys. v. United States*, 59 Fed. Cl. 627, 635-37 (2004) (the GSA CO, not the agency CO, had sole authority to evaluate the contractor's excusability defense under the schedule contract); *GTSI Corp. v. Equal Opportunity Emp't Comm'n*, CBCA Nos. 2718, 2719, 12-2 BCA ¶ 35,141 (slip op. at 4-5) (noting that "FAR 8.406-6 proved problematic in several appeals, particularly where performance disputes require *some* interpretation or application of a[ schedule contract] clause," and concluding that a "purely factual" dispute is appropriately addressed by the ordering CO).

On its face, FAR 8.406-6 does not authorize an ordering agency CO to issue decisions interpreting the schedule contract. Though the regulation allows ordering COs to "issue final decisions on disputes arising from performance of the order," FAR 8.406-6(a)(1)(i), their authority is expressly restricted by "paragraph (b) of this section," *id.* Paragraph (b) expressly requires that all "[d]isputes pertaining to the terms and conditions of schedule contracts" shall be referred to the GSA CO: "[t]he ordering activity contracting officer *shall* refer *all* disputes that relate to the contract terms and conditions to the schedule contracting officer for resolution." *Id.* at 8.406-6(b) (2004) (emphases added). "Shall" is "mandatory" language. *Andersen Consulting v. United States*, 959 F.2d 929, 932 (Fed. Cir. 1992); *see also* FAR 2.101 ("Shall denotes the imperative"). The regulation's plain language leaves an ordering CO no discretion to interpret the schedule contract. FAR 8.406-6 thus requires that all cases requiring interpretation of the schedule contract must be resolved by a single entity—the GSA CO. Finally, the relevant regulatory history describes FAR 8.406-6(b) as authorizing ordering COs to decide only those "disputes pertaining *solely* to performance of schedule orders." *Federal Acquisition Regulation; Federal Supply Schedule Order Disputes and Incidental Items*, 65 Fed. Reg. 79,702, 79,702 (Dec. 19, 2000) (proposed rule) (emphasis added).

In theory, the FAR could provide for bifurcation—that is, the portion of a dispute relating to the schedule contract would be referred to the schedule contract CO, and the portion of a dispute requiring interpretation of the order would go to the agency CO. But this procedure would be highly inefficient, and the FAR evidently contemplates that a dispute that involves the interpretation of both contracts, as well as pertaining to performance of the order, would go to the scheduling CO. That is why the FAR allows the ordering CO to "[r]efer . . . dispute[s] [pertaining to the performance of the order] to the schedule contracting officer." 8.406-6(a)(1)(ii).

Thus, we conclude that the FAR creates a bright-line rule—all disputes requiring interpretation of the schedule contract go to the schedule CO, even if those disputes also require interpretation of the order, or involve issues of performance under the order. "Bright line rules upon which the parties' expectations may be firmly established" are particularly valuable in contracting. *Bowsher v. Merck & Co.*, 460 U.S. 824, 841 n.18 (1983). The FAR and CDA were intended in part to promote uniformity, consistency, and fairness across all contracting agencies. *See, e.g.*, *Newport News Shipbuilding & Dry Dock Co. v. Garrett*, 6 F.3d 1547, 1551 (Fed. Cir. 1993); FAR 1.102. Requiring that all schedule contracts must be construed by the GSA CO maintains a clear, predictable allocation of jurisdiction between agency contracting offices and GSA.

Furthermore, a bright-line rule here will maintain jurisdictional clarity among the Boards, which is particularly important with respect to contractors that supply both civilian and military agencies. If ordering COs could issue decisions interpreting suppliers' schedule contracts, appeals to the Boards would produce two independent lines of interpretive caselaw: appeals from civilian agency ordering COs would go to the CBCA, while appeals from

military ordering COs would go to the ASBCA.[2] *See generally* 41 U.S.C. § 7105(e) (defining the jurisdiction of the Boards). Because Board precedents do not bind other Boards, this result would undermine the policy of consistency embodied in the FAR and CDA.

We hold that FAR 8.406-6 does not authorize an ordering CO to decide a dispute requiring interpretation of schedule contract provisions, in whole or in part, regardless of whether the parties frame the dispute as pertaining to performance.[3] However, the ordering CO is certainly authorized to construe the language of the order (or its modifications). Because an order's details—not merely price, quantity, and specifications, but also permissible variation in quality or quantity, hours and location of delivery, discounts from schedule pricing, etc.[4]—are arranged between the schedule contractor and

---

[2] To be sure, claimants can avoid the Boards entirely by appealing to the Court of Federal Claims ("CFC"), which has a mechanism to maintain consistency: if multiple suits arising from a contract are pending in the CFC and one or more Boards, the CFC may order their transfer or consolidation. *See* 41 U.S.C. § 7107(d).

[3] To the extent the ASBCA's caselaw might be read to endorse ASBCA jurisdiction over all disputes not "'related *solely* to the validity and/or applicability of the terms and conditions of the' schedule contract," see *ASBCA Decision*, at 171,622 (quoting *Sharp*, ASBCA No. 54475, at 161,796) (emphasis added), we disapprove that reading. Any claim which disputes the interpretation of the terms and conditions of the schedule contract must go to the scheduling CO, even if there are other disputed issues as well.

[4] FAR 8.406-1 instructs that orders "shall include the following information *in addition to* any information required by the schedule contract": free on board (FOB)

the ordering CO, the ordering CO is able to construe these commonly disputed terms as long as the dispute does not involve interpretation of the schedule contract. We also see no reason why an ordering CO resolving a dispute cannot apply the relevant provisions of the schedule contract, as long as their meaning is undisputed. For example, an ordering CO who resolves a dispute over whether goods are conforming may apply schedule contract provisions governing replacement of nonconforming goods. *See* FAR 8.406-3(a) (2012) ("If a [schedule] contractor delivers a supply or service, but it does not conform to the order requirements, the ordering [CO] shall take appropriate action in accordance with the inspection and acceptance clause of the contract, as supplemented by the order."). The dispute only need go to the GSA CO if it requires interpretation of the schedule contract's terms and provisions.

In this case, the dispute turns on whether the Army incurred premature discontinuance fees when it did not

---

delivery point (i.e., origin or destination); discount terms; delivery time or period of performance; quantity and any variation in quantity; number of units; unit price; total price of order; points of inspection and acceptance; other pertinent data (e.g., delivery instructions or receiving hours and size-of-truck limitation); marking requirements; and level of preservation, packaging, and packing. FAR 8.406-1(d) (emphasis added). Furthermore, the delivery order must include "a statement of work for services, when required, or a brief, complete description of each item (when ordering by model number, features and options such as color, finish, and electrical characteristics, if available, must be specified)." FAR 8.406-1(d)(8); *see also* FAR 8.405-2(b) (defining the contents of a statement of work).

fully exercise Option Year Three. These fees are a contractual remedy provided in Sharp's Schedule Pricelist, set forth in Modification No. 32 to Sharp's Schedule Contract. As discussed above, the Army argues that the discontinuance provisions are inapplicable because Mod 11 bilaterally specified a new end date for Option Year Three before it was exercised, so there was no premature discontinuance. Sharp does not argue that the Army was contractually obligated to exercise Option Year Three. Rather, Sharp contends that the Army's partial exercise of Option Year Three constituted a premature discontinuance under the relevant contractual provisions. The parties' dispute does not merely pertain to the facts of the dispute—indeed, the facts here are undisputed. Rather, the disagreement concerns whether a partial exercise (or a bilateral modification) is a premature discontinuance as defined by Sharp's Schedule Contract. It is clear that this requires construction of Mod 11, but more importantly, it also requires interpretation of the relevant provisions of Sharp's Schedule Contract. Thus, the dispute in this case must be decided by the GSA CO.[5]

We recognize that the distribution of contracting officer authority (compelled by the way FAR 8.406-6 is written) is less than perfect. The old regime left no authority with the ordering CO, even where no genuine dispute under the schedule contract existed. The new regime vests the ordering CO with authority to decide contract disputes, so long as the disputes do not require interpretation of the schedule contract. This is so even though many aspects of a dispute requiring interpretation of the schedule contract can involve matters on which the

---

[5] Here, it does not matter if the provisions of Sharp's Schedule Contract are incorporated in the order expressly or by reference; either way, the provisions are those of the schedule contract agreed to by Sharp and the GSA CO.

ordering CO clearly has a better command of the facts than would the schedule contract CO. But any perceived fault in the distribution of contract officer authority derives from the carefully articulated language of FAR 8.406-6. If expanded authority for the ordering CO is desired, FAR 8.406-6 can be amended to that end.

Sharp correctly notes that the Army CO failed to refer Sharp's claim to the GSA CO as required by FAR 8.406-6(b). But Sharp's contention that this failure waives any jurisdictional deficiencies is meritless, because an essential prerequisite of Board jurisdiction—a final decision by an *authorized* CO—is absent, *see Reflectone*, 60 F.3d at 1575, and jurisdictional deficiencies cannot be waived.

Because Sharp's claim cannot be resolved without interpreting the premature discontinuance provisions in Sharp's Schedule Contract, the Army CO has no authority to decide the claim or issue a deemed denial, and the ASBCA lacks jurisdiction of Sharp's appeal. Since the CDA's six-year statute of limitations has not yet run, *see* 41 U.S.C. § 7103(a)(4)(A), Sharp may timely resubmit its claim to the GSA CO, and appeal if it is dissatisfied with the result.

**AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

_____

**SHARP ELECTRONICS CORPORATION,**
*Appellant,*

v.

**JOHN MCHUGH, SECRETARY OF THE ARMY,**
*Appellee.*

_____

2012-1299

_____

Appeal from the Armed Services Board of Contract Appeals in No. 57583, Administrative Judge John J. Thrasher.

_____

ANDREW KENNETH WIBLE, Cohen Mohr, LLP, of Washington, DC, argued for the appellant. Of counsel was ANDREW J. MOHR.

NICHOLAS JABBOUR, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellee. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and HAROLD D. LESTER, JR., Assistant Director.

_____

PLAGER, *Circuit Judge*, dissenting.

I respectfully dissent. Admittedly, the FAR dispute provision under review lends itself to several competing interpretations. The interpretation favored by the majority, though hardly dictated by the terms of the disputed provision, if it had been an authoritative agency interpretation under *Chevron* could be considered to be within the range of reasonable interpretations.[1] As a judicial exercise in regulatory construction, however, the majority's version of the rule does not comport with the purpose of the Councils that drafted the rule, it adopts a procedure that fails the "bright-line" test the majority claims for it, and, most importantly, it dictates a result that falls short of a common sense solution to the problem presented.[2]

### A.

This is litigation about where to litigate a government contract, and, as has famously been said, "Nothing is more wasteful than litigation about where to litigate, particularly when the options are all [boards] within the same legal system that will apply the same law."[3] What appeared at first reading to be a straightforward exercise in construction of a regulatory provision, upon closer examination proved to be anything but straightforward. And the consequence of choosing between competing theories of how this contract dispute should be resolved—

---

[1] *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

[2] "Common sense" has not always been a criterion for judicial decisions, but has recently been legitimated for that purpose. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007).

[3] *Bowen v. Massachusetts*, 487 U.S. 879, 930 (1988) (Scalia, J., dissenting). I have substituted the word "boards" for the word "courts" in the original.

more accurately, who should resolve it—is of considerable significance for the administration of government contracts.

The disagreement in this case is over which Contracting Officer (CO)—the Army's agency CO or the schedule contract CO (the GSA CO), and derivatively which Board of Contract Appeals—is the correct authority to decide this particular contract dispute. As the majority explained, the schedule contract, negotiated with the supplier by and prepared under the supervision of a GSA contracting officer (GSA CO) responsible for government-wide contracting for that group of products, describes in general terms the range of such products being offered by the particular supplier. The schedule contract spells out the terms on which the products are being offered, and the permissible parameters for any order (or delivery) contract an agency contracting officer may wish to enter into on behalf of the agency.[4] The agency CO with a need for such products then initiates with the supplier an order contract for the specific products desired for the particular agency facility. This could be an outright purchase order, or, as was the case here, a lease of products for a period of years.

The order contract may expressly incorporate the governing provisions of the schedule contract, as was done in this case,[5] and is written to comply with its terms and

---

[4]   A note on terminology—in the trade, the contract made by the agency CO may be referred to as a "delivery contract." In the regulations, the term "ordering activity contracting officer" is used, and hence the contract may be called an "order contract." They mean the same; I will use the term "order contract" for consistency.

[5]   *See* ASBCA finding #4 in *Appeal of Sharp Electronics Corp.*, ASBCA No. 57583, 12-1 B.C.A. (CCH) ¶ 34903.

conditions. For example, the schedule contract might authorize a range of years, such as 1 to 5, during which a lease for the products could be made. The order contract would be for a specific term within that range, say for one year. If initial term extension options are desired, the order contract will spell out those options consistent with the provisions in the schedule contract for such term extensions, up to a maximum of five years total.[6]

The uninitiated might say that the question of who initially gets to decide the dispute is easily answered—it depends on which contract's provisions govern the alleged breach. If the order contract, then the agency CO who negotiated and administers the order contract with the supplier has first dibs; if the schedule contract, then the GSA CO who negotiated the authorizing schedule contract. But when the two contracts are written to interact intimately with each other and deal with the same legal issues, and in places may have similar if not identical terminology, it may not be obvious in a given dispute which contract's terms govern, and thus which contracting officer first rules. What is needed is a governing principle that draws a line between what are essentially overlapping authorities, a default rule that can specify which contracting officer is authorized to decide which kind of dispute, preferably one that can be consistently applied by parties and adjudicators.

In this case, the contract dispute, the merits of which are not now before us, turns on provisions in both the order contract and schedule contract dealing with leases and extension of the lease terms for additional option years over the initial year provided in the order contract,

---

[6]  *See infra* note 7.

plus modifications to the order contract later added.[7] Sharp alleges the Army prematurely cancelled the third option year of the order contract, entitling it to the specified discontinuance fees, to which the Army responded that the modifications to the order contract, agreed to by the parties, authorized the early termination.

Both parties understood that the current default rule—FAR 8.406-6—indicated that their dispute should go to the agency CO for decision. But after the supplier filed with the agency CO, that official neither ruled on the dispute nor took the opportunity to forward it to the GSA CO, for which the rule provides. Having waited the requisite time for a decision, Sharp, as permitted by the Contract Disputes Act, deemed its request for relief denied and appealed the denial to the Armed Services Board of Contract Appeals (ASBCA), the appropriate appellate board for an appeal from a decision of a military agency CO. Again, both Sharp and the Army appear to have been in agreement that that was the proper course for obtaining a decision, though as noted they had differing views of how the merits of the contract dispute should be decided.

To the parties' surprise, the ASBCA *sua sponte* ruled that, since language in the schedule contract as well as in the ordering contract dealt with the mechanics of term extensions, the ASBCA did not have jurisdiction to decide the dispute. In the Board's view, the appropriate CO for ruling on the dispute was the GSA CO and not the agency CO. Sharp promptly appealed that ruling here. The issue to be decided in this appeal is whether the ASBCA applied the proper default rule in refusing to decide the

---

[7] *See* J.A. 18-50, 71-76, 192-207, and 286-300 for the relevant overlapping provisions of the Schedule Contract and the implementing provisions in the Order Contract, especially regarding option years and Amendment 11.

merits issue that the dispute presented. I think the Board erred; for the reasons I shall explain, I would reverse the ruling of the ASBCA and remand the matter to the ASBCA for decision on the merits.

## B.

The default rule presently in place is FAR 8.406-6. The predecessor rule was FAR 8.405-7, which, after being amended to its current form in 2002, was later renumbered as 8.406-6. Prior to being amended, the default rule—original FAR 8.405-7—stated that "The ordering office shall refer all unresolved disputes under orders to the schedule contracting office for action under the Disputes clause of the contract." Since "the Disputes clause of the contract" could refer either to a disputes clause in the ordering contract or in the schedule contract, or both, the rule and result were clear—the GSA CO decided contract disputes.

In 2000, the Civilian Agency Acquisition Council and the Defense Acquisition Regulations Council (the Councils), which is the group responsible for such matters, proposed to amend FAR 8.405-7 to give the ordering agency CO more of a role in deciding contract disputes. This made some sense, particularly when a dispute might be more appropriate for the ordering CO to decide, such as a dispute related primarily to the terms and conditions of the order contract.

But keeping a clear distinction between the order contract and the schedule contract when writing the new rule was not so easy. At the outset, in announcing the purpose of the proposed amendment to the rule, the Councils stated that it was "to permit the ordering office contracting officer to issue a final decision regarding disputes pertaining solely to performance of schedule orders." The use of the term "schedule orders" blended the two contract descriptors together, and introduced the question of what is "performance" of "schedule orders."

This blending problem was carried over into the amended rule. As the issue in the case before us illustrates, and as the majority opinion correctly notes, since its adoption FAR 8.406-6 has been a source of uncertainty about the scope of authority of the agency CO's vis-à-vis the GSA Co's. It is that uncertainty that we must attend to, and if possible clarify as guidance for future cases.

## C.

I begin with the relevant language of the current rule:

8.406-6 Disputes.

(a) *Disputes pertaining to the performance of orders under a schedule contract.*

> (1) Under the Disputes clause of the schedule contract, the ordering activity contracting officer may—
>
> > (i) Issue final decisions on disputes arising from performance of the order (but see paragraph (b) of this section); or
> >
> > (ii) Refer the dispute to the schedule contracting officer.
>
> (2) The ordering activity contracting officer shall notify the schedule contracting officer promptly of any final decision.

(b) *Disputes pertaining to the terms and conditions of schedule contracts.* The ordering activity contracting officer shall refer all disputes that relate to the contract terms and conditions to the schedule contracting officer for resolution under the Disputes clause of the contract and notify the schedule contractor of the referral.

FAR 8.406-6 (2012).

As a close reading reveals, and as I will further detail, FAR 8.406-6 is not the clearest example of regulatory drafting, and indeed might be used as an example of how not to write a rule. This much at least is clear—the rule is divided into two subsections with different titles: subsection (a) is addressed to disputes "pertaining to the performance of orders under a schedule contract"; subsection (b) addresses disputes "pertaining to the terms and conditions of schedule contracts."

By its terms, subsection (a) addresses performance issues arising under the terms of order contracts issued pursuant to a schedule contract. The subsection consists of instructions regarding actions to be taken by the ordering activity contracting officer (the agency CO), leaving no doubt that the contracting party with a complaint—the supplier here—is to address the complaint to that officer in the first instance. In response to the complaint filed by the supplier, the ordering activity contracting officer is instructed to take one of two actions: (1) issue a final decision under the Disputes clause of the schedule contract on a dispute arising from performance of the order contract; or (2) refer the dispute to the schedule contracting officer (the GSA CO).[8] Note that the authority given the ordering activity contracting officer is with regard to the disputes clause of the *schedule contract*; the subsection says nothing about a dispute that relates to the disputes clause, if any, of the order contract.

Subparagraph (b) addresses disputes pertaining to the "terms and conditions of schedule contracts." But again, the subsection describes only actions to be taken by the ordering activity contracting officer, confirming the point made about subsection (a)—it is the duty of the agency CO, not the complainant supplier or the GSA CO,

---

[8] If the agency CO makes a final decision in the matter per (1), the GSA CO is to be advised.

to determine whether it is necessary for the GSA CO to become involved. The agency CO is to refer the complaint to the GSA CO for resolution if the dispute "relate[s] to the contract terms and conditions." Though not entirely clear, presumably the unqualified reference to *contract terms and conditions* at this point in the text means the *schedule contract's* terms and conditions, since that is the heading of the subsection and the provision would make even less sense otherwise.[9]

The plain language of the rule tells us at least this much:

- All contract disputes between a supplier and the ordering agency that relate to *the Disputes clause of the schedule contract* are addressed to the ordering activity contracting officer (the agency CO) for initial decision;

- Nothing in either subsection (a) or (b) refers to disputes that might arise directly under an order contract and its disputes clause, if any;

- The agency CO may decide the dispute, even though it relates to the disputes clause of the schedule contract, or may refer the dispute to the GSA CO—the decision which to do lies with the agency CO;

- The only guidance given the agency CO about whether to decide or refer is that, if the dispute "relate[s] to" the "contract terms and conditions" (as noted presumably of the schedule contract), the agency CO shall refer it to the GSA CO.

---

[9]   The subsection then ends with the redundant direction to the agency CO to notify the GSA CO of the fact that a referral has been made to the GSA CO.

The reader at this point should have little problem seeing that FAR 8.406-6 does little to solve the conundrum of which contract—or contracting officer—to give priority when the terms and conditions of the order contract and the schedule contract are in *para materia*, literally as well as legally, and when the one may expressly incorporate the other. What FAR 8.406-6 leaves wholly unclear is how, when certain contract performance duties of the parties are necessarily spelled out in the terms and conditions of the order contract, the ordering agency CO is to draw the line between a performance breach under an order contract in which "the Disputes clause" of the schedule contract is implicated, which the agency CO nevertheless is to rule upon; and a breach in performance that "relate[s]" not to the order contract but to the "contract terms and conditions" of the schedule contract, which only the GSA CO can decide.

Note that I refer to a performance breach in both situations though performance is mentioned only in subparagraph (a). Without an alleged breach in contract performance by one of the parties, a contract dispute would not seem to involve the terms and conditions of either contract. That is, a dispute about whether a contract was actually formed in the first instance would not necessarily implicate subsequent performance of the contract, but that kind of dispute seems not to be the kind involved under the disputes clause of FAR 8.406-6.

It is the search for how to draw that line—to find a sensible default rule to be applied by the ordering contracting officer in performing the tasks assigned by FAR 8.406-6—that is the conundrum in this case.

## D.

It is possible to read into the language of the rule a meaning that any time the terms and conditions of the schedule contract are relevant in any material way to the dispute, even though the alleged breach is also a breach of

the order contract's terms, the dispute shall be referred to the GSA CO by the agency CO. This would in effect reinstall the earlier version of the rule before its amendment in 2002, as if it read: "The ordering activity contracting officer shall refer all disputes that relate, *in any way,* to the contract terms and conditions of the schedule contract to the schedule contracting officer . . ." (italics added for clarity). I will refer to this as the "GSA CO/default" rule.

One alternative reading of the rule arrives at the opposite outcome, as if subparagraph (b) read: "The ordering activity contracting officer shall refer *only those* disputes that relate *solely* to the contract terms and conditions [of the schedule contract] to the schedule contracting officer . . . ." Put another way, a dispute that can be decided under the terms of the agency ordering contract should be decided by the agency CO, even if there is related language in the schedule contract. I will refer to this as the "agency CO/default" rule.

What are the consequences of picking one or another of these alternative readings? Turning first to the 'GSA CO/default' rule, and given the likely overlap in purpose and terminology of the two contracts, this rule would again have the effect of sending most contract disputes to the schedule contracting officer, the GSA CO. Even if a case does not immediately invite that result, it may provide the opportunity for forum shopping. A reasonably creative attorney for a supplier who believes the agency CO to be unfriendly can seek out some language in the schedule contract that arguably relates to the dispute, and then argue for a referral to the GSA CO.

Furthermore, one wonders how many contract disputes there are in which some language from the schedule contract cannot be found relevant? That is to say, how many contract disputes turn *solely* upon performance requirements found *only* in the order contract, when the

agency order contract is intentionally designed and written to piggy-back on the terms and conditions of the schedule contract? As earlier noted, there could be a few such disputes. Others are suggested by the majority, based on related provisions of the FAR which spell out provisions that should be in an order contract, though without indicating whether they may also be found in the schedule contract. In any event, these kinds of disputes are likely to be easily resolved with little litigation.

The more difficult disputes, those for which a workable rule is needed, are those about issues that turn on contract terminology, but terminology likely found both in the agency contract and, in some form or other, in its underlying schedule contract. This case is perhaps a good example. Interestingly, both the agency and the supplier thought this case was in fact one that turned on the term extension provisions of the agency's ordering contract as subsequently modified, even though they disagreed as to exactly which of the provisions controlled. Thus, when the agency CO failed to act on the dispute, the parties asked the agency contract appeals board—the ASBCA—to decide the case.

The ASCBA, ignoring its own precedents holding that it had jurisdiction unless the dispute was related "solely to the validity and/or applicability of the terms and conditions of the [schedule contract]," *In Re Spectrum Healthcare Res., Inc.*, ASBCA No. 55120, 06-2 B.C.A. (CCH) ¶ 33377 (citing *In Re Appeal of Sharp Electronics Corp.*, ASBCA No. 54475, 04-2 B.C.A. (CCH) ¶ 32704), held that jurisdiction lay exclusively with the GSA CO (and thus the Civilian Agency Board of Appeals) because the merits related to language found in the schedule contract. Under this GSA CO/default rule, the determination of who decides a contract dispute will turn on whether one can find language in both documents that seems to bear somehow on the outcome of the dispute; if so, it goes exclusively to the GSA CO. This suggests that, except in

the simplest of disputes, the case will more often than not be one in which there is some relevant language to argue over, since the two contracts are inextricably intertwined. A bright line this is not.

Though only time will tell for sure, it would seem that under the GSA CO/ default rule the GSA contracting officers responsible for the overall schedule contracts will again become immersed in any number of order contract disputes that turn on local events and local understandings, regarding which the agency contracting officers may be better positioned to deal. Returning priority for dispute resolution to the central agency GSA CO under the GSA CO/default rule can only make contracting with the Government more drawn out and complex, and therefore more expensive; the Councils were correct in trying to find a way to give more decisional authority to the ordering agency CO, even though the Councils did not get it quite right.

The alternative default rule—agency CO/default— means that a dispute that can be decided under the terms and conditions of the agency order contract should be decided by the agency CO, even if there can be found some language in the schedule contract that appears presumptively relevant. This default rule seems better designed to produce efficient and acceptable outcomes since it utilizes the available knowledge and expertise of the agency contracting officer. And a decision by the agency CO, even if it necessarily implicates in some small measure language in the schedule contract, remains controlling only as to the facts of the local dispute, and does not govern future application of the schedule contract in other contexts. Thus the concern for uniformity in the interpretation of the schedule contract is not implicated; ultimately, control over the broad meaning of the schedule contract remains a matter for the GSA CO and the Civilian Board of Contract Appeals.

Instructive on this point is a recent case, decided under the current version of FAR 8.406-6 by the Civilian Board of Contract Appeals: *GTSI Corp. v. Equal Emp't Opportunity Comm'n*, 12-2 BCA ¶ 35141, decided September 2012; the case was cited but not discussed in detail by the majority. In *GTSI*, the issue was whether the ordering agency (the EEOC) Contracting Officer or the GSA's Contracting Officer (under the schedule contract) had jurisdiction over a dispute regarding renewal under an option provision. GTSI had submitted identical claims to both the agency CO and the GSA CO (one way to solve the conundrum of who decides). The agency CO denied the claim; the GSA CO did not respond. The cases were consolidated on appeal before the Civilian Board of Contract Appeals, which hears appeals in cases involving civilian federal agencies, and is also the board that decides cases on appeal from the GSA CO's.

The Civilian Board noted that "[a]s ordering agencies increasingly use FSS [GSA schedule] contracts to fulfill their needs, there is also an increased potential for disputes arising out of the task and delivery orders issued by the ordering agencies." *Id.* The Board further noted that oftentimes the facts giving rise to a dispute are best known by the ordering agency, and that which FSS contract provision applies to the dispute is only "a tangential issue." *Id.* The Board went on to explain that, "In the appeal before us, it was not the terms and conditions of the FSS contract clauses or their interpretation that caused this dispute. Rather, it was the action (or inaction) of the ordering agency, by refusing to exercise an option, that caused the dispute." *Id.* The Board held that under FAR 8.406-6, jurisdiction lay with the agency CO, not the GSA CO.

E.

As presented, it is necessary in order for us to decide the case before us to choose one or the other of these

default rules, since the FAR itself does not. The rather confused and redundant language of FAR 8.406-6 supports either version equally.

Unlike my colleagues in the majority, I opt for the rule that seems most likely to promote efficient, prompt, and knowledgeable decisions, the rule that gives the agency CO initial responsibility to decide the case presented to it *unless* it is necessary to invoke the special expertise of the schedule CO to construe the schedule contract provisions. Thus, if the issue is one which reasonably turns on the performance requirements of the order contract, regardless of whether it can also be said to be within the terms and conditions of the schedule contract as well, the agency CO should initially decide the matter, with appeals taken to the agency CO's applicable contract appeals board.

On the other hand, if the dispute directly raises the terms and conditions of the schedule contract and *cannot be decided without a determination of the meaning of those terms and conditions*, then the agency CO should refer the dispute to the appropriate schedule CO. This is a default rule that requires little guessing, and is not dependent on the lawyering skills of the parties.

I say unlike my colleagues in the majority. As I understand it, we agree that the FAR does not authorize an ordering agency CO to issue decisions interpreting the schedule contract—all cases *requiring* interpretation of the schedule contract must be resolved by the GSA CO. *See* Maj. Op. at 10. However, if I read the opinion correctly, the majority concludes that a dispute that involves a party's performance under the ordering contract, based on an interpretation of the ordering contract, nevertheless goes to the scheduling contract (GSA) CO if the dispute *may* be argued to involve interpretation of related language in the schedule contract—even if the dispute could

be resolved without resorting to the latter interpretation issue. *Id*. at 11.

They try to soften what appears to be a classic GSA CO/default position by noting that "the ordering CO is certainly authorized to construe the language of the order (or its modifications)," *id*. at 12, unless of course the dispute also relates to language in the schedule contract that would appear to be subject to interpretation. They call this a "bright line" rule, but how bright it is can be seen by asking, since the issue in the case before us is a question of performance of the order contract and of interpretation of the provisions of that contract as modified by the parties, why under the majority's rule does this case not fall within the purview of the agency CO? Is it because there is language in the schedule contract that may also relate to the issue, as noted in the margin above (*see supra* note 7), which as I earlier explained is likely to be the case in many of these disputes? In which case we are essentially back to the GSA/CO default position from which the Councils were trying to escape.

As the majority notes, should either my understanding or the majority's fail to capture the main thrust of whatever it was the authoring Councils had in mind when they amended the FAR by adding the revised 8.406-6, they are of course free to rewrite the rule; nothing precludes the Councils from amending the FAR to more clearly state their intention.

Given my understanding of FAR 8.406-6, and in light of what the Councils presumably were attempting to do, the position of the ASBCA in this case is in error. The ASBCA was of the view that, because there is language in the schedule contract to which the dispute could refer, the decision authority necessarily was the schedule contract officer. That is not the correct test. The correct test is, assuming there is language in the schedule contract to which the dispute could refer, is the interpretation of that

language necessary to the resolution of the dispute? If not, that is, if the dispute can be resolved by the agency contracting officer under the provisions of the order contract and without directly engaging the terms and conditions of the schedule contract, then it is the duty of that officer under FAR 8.406-6 to decide the dispute.

On the record before us, this is such a case, a conclusion regarding which the parties were from the outset in agreement: the merits of this contract dispute should be resolvable under the terms and conditions of the order contract since the scope of the contract extension provision and the modification at issue were essentially questions regarding the order contract. But what if the appearance from the record, and the parties, are in error, and the schedule contract's interpretation is an essential ingredient in the resolution? The appeal from the decision of the agency CO properly is before the ASBCA, and one of the issues subject to appeal is whether, applying the correct test, the agency CO had authority to decide the case—that is, whether the case cannot be decided without a determination of the meaning of the applicable terms and conditions of the schedule contract. The ASBCA exercising its appellate powers is of course free to make such a determination, as it purported to in this case.

Under FAR 8.406-6 referral of this dispute to the agency CO for decision in the first instance was correct. Because of the deemed denial, appeal to the ASBCA was also correct. The matter belongs before the ASBCA, both for determination of the jurisdiction question, if that is at issue under the correct test, and, assuming the Board retains jurisdiction, for decision on the merits.

I would reverse the decision of the Board preemptively denying jurisdiction over this dispute.[10]

---

[10]  I note that the majority opinion concludes with the statement that Sharp may timely resubmit its claim to the GSA CO.  Since as discussed above, the FAR Disputes clause makes no provision for direct submittal of a dispute to the Schedule CO, it would seem that under FAR 8.406-6 (and absent some other authority permitting such a direct submittal) Sharp's available route in response to the majority's outcome is to resubmit its claim to the ordering agency CO in hopes of something other than inaction and a deemed denial.  But see GTSI, discussed earlier, apparently permitting direct submission to the GSA CO.